UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN NORRIS,

    Plaintiff,                                                                 Civil Action No. 11-11974

v.                                                                     HON. MARK A. GOLDSMITH
                                                                         U.S. District Judge
                                                                         HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Ann Norris brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #8] be DENIED.

## PROCEDURAL HISTORY

       Plaintiff applied for DIB and SSI on January 23, 2008, alleging disability beginning on June 23, 2006 (Tr. 108-114). After the initial denial of benefits, Plaintiff requested an administrative hearing, held on February 25, 2010 in Chicago, Illinois before Administrative

Law Judge ("ALJ") Mary Ann Poulose (Tr. 28). Plaintiff, represented by Andrea Hamm, testified by video conference from Oak Park, Michigan (Tr. 32-53). Vocational Expert ("VE") Craig Johnson also testified (Tr. 53-58). On March 25, 2010, ALJ Poulose found Plaintiff not disabled (Tr. 24). On March 23, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on May 5, 2011.

## BACKGROUND FACTS

Plaintiff, born August 4, 1970, was 39 on the date of the ALJ's decision (Tr. 24, 108). Her application states that she received a GED and worked previously as an administrative assistant, sales representative, telephone representative, and a cleaner with supervisory responsibilities (Tr. 141, 145). She alleges disability as a result of a lower back injury causing neck pain and finger and toe numbness (Tr. 140)

### A.    Plaintiff's Testimony

Plaintiff testified that she currently lived with her brother and 17-year-old son (Tr. 32). Contrary to the information on her application, Plaintiff stated that she left school in 10th grade and did not obtain a GED (Tr. 32). She stated that she last worked in June, 2006 as a phone analyst (Tr. 32-33). She stated that she stopped working because she was laid off, but that at the time of the layoff, she "was in severe pain" (Tr. 33). She reported that before working as a phone analyst, she held a position as an "auto part delivery manager" (Tr. 33).

Plaintiff denied problems driver or taking care of her personal needs (Tr. 35). She stated that her sister performed all of her laundry and grocery shopping chores (Tr. 35). She

stated that she watched television "all the time" (Tr. 36).  She testified that a typical day consisted of getting up, going back to bed, eating breakfast, taking medication, eating lunch, watching television, napping, and preparing dinner (Tr. 37).  She stated that she was not sure whether she could lift a gallon of milk (Tr. 37).  She estimated that she could sit for only 20 minutes before requiring a position change due to back pain and numbness radiating into her legs (Tr. 35-36).  She stated that she did not know how long she was able to stand or walk without a break (Tr. 38-39).  She alleged difficulty bending at the waist (Tr. 39).  Plaintiff reported that she required the use of a cane (Tr. 39).  She stated that she was unable to reach overhead (Tr. 40).  She denied significant manipulative difficulties, acknowledging that she "could probably work around a computer a little bit" (Tr. 40).

Plaintiff reported that she took Darvocet, Motrin 800, and a muscle relaxer every day, with the side effects of stomach aches and headaches (Tr. 41).  She reported some improvement from physical therapy but that steroid injections, while helpful at first, were progressively less effective (Tr 42).

In response to questioning by her attorney, Plaintiff testified that the State of Michigan paid her sister to perform household and shopping chores on her behalf (Tr. 43).  She alleged sleep disturbances as a result of back pain (Tr. 44).  Plaintiff stated that Darvocet made her sleepy, adding that she took it during the day only if she wasn't going out (Tr. 46).  She also attributed her daytime sleepiness to interrupted nighttime sleep (Tr. 47).  On a scale of 1 to 10, she characterized her pain as a "ten plus," later stating that her typical pain level was a "seven or eight" (Tr. 48).

Plaintiff testified that cold weather exacerbated her back pain (Tr. 48). She alleged that her condition precluded vacuuming and even light household chores (Tr. 48). She stated that in December, 2007, surgery had been recommended by a consulting source but that her treating physician, Dr. Beal, advised her to try conservative measures (Tr. 49). She stated that she used her cane while performing household activities (Tr. 50). She stated that her most comfortable position was lying on her side with two pillows between her legs (Tr. 51). Aside from her two daily naps, Plaintiff alleged that she laid down to rest her back four to five times each day (Tr. 51). She stated that she attempted to perform physical therapy exercises everyday (Tr. 53).

**B.     Medical Evidence**

**1. Treating Sources**

March, 2007 treating notes state that Plaintiff complained of back pain (Tr. 232). She was prescribed Darvocet and Motrin 800 (Tr. 231). Imaging studies performed the following month show moderate degenerative changes at L5-S1 (Tr. 336). In May, 2007, James E. Beale, Jr., M.D. remarked that Plaintiff had experienced back pain for the past year (Tr. 210). The following month, Plaintiff reported that her back pain had improved (Tr. 223). An MRI showed a disc protrusion of the lumbar spine (Tr. 222). In November, 2007, Dr. Beale prescribed Motrin 800 and steroid injections (Tr. 213). In December, 2007, Bothra Rajendra, M.D. administered three epidural injections over the course of the month (Tr. 198-204). The same month, Plaintiff complained that her inability to exercise regularly was causing weight gain (Tr. 253). She reported dull aching back pain shooting intermittently

into her legs, but denied problems walking (Tr. 261). The same month, Arathi Raman, M.D. commented that the April, 2007 MRI showed mild L5 radiculopathy but no stenosis and only a "mild degree" of arthropathy at T2 (Tr. 262-263, 323-324). March, 2008 occupational therapy discharge summary states that Plaintiff experienced improvement in ease of dressing, grooming meal preparation, housework, and a number of other functional categories (Tr. 265).

A January, 2008 CT of the lumbar spine found mild degenerative changes at L4-L5 and L5-S1 (Tr. 259). In March, 2008, Dr. Beale recommended weight loss (Tr. 349). An October, 2008 MRI of the lumbar spine was unchanged from a previous April, 2007 study (Tr. 300, 354, 374). The same month, Dr. Beale again prescribed Darvocet and Motrin 800 (Tr. 346). On December 2, 2008, imaging studies were negative for evidence of lumbosacral radiculopathy (Tr. 373). On December 18, 2008, Dr. Beale completed a work-related abilities assessment, finding that Plaintiff was unable to sit or walk for more than one hour in an eight-hour workday and was unable to stand (Tr. 356). Plaintiff was limited to lifting five pounds and limited to occasional bending (Tr. 356). Dr. Beale found that Plaintiff required a job with a sit/stand option and would be unable to perform fine finger manipulations for more than one hour in an eight-hour day (Tr. 357). In February, 2010, Dr. Beale completed a second work-related abilities assessment, duplicating his findings of December 18, 2008 (Tr. 356-357, 388-389).

### 2. Consultive and Non-Examining Sources

In March, 2008, Sonia Ramirez, M.D. conducted a consultive physical examination

of Plaintiff on behalf of the SSA (Tr. 277-284). Plaintiff stated that she was able to cook and perform housework (Tr. 277). She estimated that she could stand for 10 minutes and sit for 15 before requiring a change of position (Tr. 277). Plaintiff reported that she finished high school (Tr. 277). Plaintiff exhibited back tenderness but a normal range of motion (Tr. 278-279, 283). She demonstrated normal manipulative abilities (Tr. 280). She did not exhibit the need for a walking aid (Tr. 281).

The following month, a non-examining Residual Functional Capacity Assessment performed on behalf of the SSA by Charles Edmonds, M.D. found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 286). The Assessment found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 287-289).

### C. Vocational Testimony

VE Johnson classified Plaintiff's past relevant work as an auto parts sales clerk as skilled and generally performed at the exertionally light level (Tr. 54). However, the VE found that the position, as described by Plaintiff, would be performed at the medium exertional level [1](Tr. 54). He found that the customer order clerk job semi-skilled/sedentary;

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

work as an auto dealership manager, skilled/light; and work as a supervisor cleaner skilled/medium (Tr. 54). The ALJ posed the following limitations to the VE, taking into account Plaintiff's age, education, work experience, and skill set: "light work that did not involve overhead reaching, and exposure to the cold" (Tr. 54). The VE replied that if Plaintiff were so limited, she could return to position as a customer order clerk as previously performed and the auto parts clerk position as generally performed in the national economy (Tr. 54-55). In addition, VE Johnson found that the above limitations would allow Plaintiff to perform the work of a cashier (light) (46,000 positions in the regional economy); telemarketing work (sedentary)(7,000); and customer service (light)(10,000), (sedentary)(10,000) (Tr. 55). He testified further that if Plaintiff required a sit/stand option the available cashier positions would be reduced to 10,000 (Tr. 55).

In response to questioning by Plaintiff's attorney, the VE stated that if Plaintiff were off task more than 15 percent of the workday because of pain and medication side effects, all of the above jobs would be precluded (Tr. 56). Likewise, the VE stated that if Plaintiff were unable to attend work more than six times in a six-month period, she would be unable to hold any job (Tr. 56). However, the VE stated Plaintiff would not be required to lift more than five pounds in any of the above-stated jobs (Tr. 57).

The VE concluded by stating that his information was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for his sit/stand findings, which were based on his own professional experience (Tr. 58).

### D. The ALJ's Decision

Citing the medical records, ALJ Poulose found that Plaintiff experienced the severe impairment of degenerative disc disease of the lumbar spine but that the condition did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Tr. 18-19). She found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following limitations: "a sit/stand option, with no overhead reaching, and she must avoid exposure to the cold" (Tr. 19).

Citing the VE's job findings, the ALJ found although Plaintiff was unable to perform any of her past relevant work, she could work as cashier, telemarketer, and customer service representative (Tr. 22-23). The ALJ accorded "little weight" to Dr. Beale's assessment, stating that "Dr. Beale's opinions are entitled to little weight because his opinions are conclusory, providing very little explanation of the evidence he relied on in forming his opinion" (Tr. 22).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

**A. The Step Three Analysis**

Plaintiff argues first that the ALJ's Step Three analysis was inadequate. *Plaintiff's Brief* at 8-10. Specifically, she contends that the finding that she did not meet Listing 1.04 (Disorders of the Spine) 20 C.F.R., Part 404, Subpart P, Appendix 1 was not well explained. *Id.*

"At step three, an ALJ must determine whether the claimant's impairment 'meets or is equivalent in severity to a listed...disorder.'"*Rabbers v. Commissioner Social Sec. Admin.,* 582 F.3d 647, 653 (6th Cir. 2009)(citing 20 C.F.R. § 1520(d)(2)). "The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Rabbers,* at 653 (citing § 404.1525(a)). "In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Id.* "A claimant must satisfy all of the criteria to meet the listing." *Id.* (citing 404.1525(c)(3)).

The criteria for a disability finding at Step 3 under Listing 1.04 is stated as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

  A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

After citing the conditions and symptoms comprising Listing 1.04, the ALJ stated that "[w]hile the claimant experiences some pain and limitations as a result of degenerative disc disease, imaging studies and other objective pain and limitations as a result of degenerative disc disease, imaging studies and other objective clinical assessments do not reflect findings consistent with **all** the requirements identified in this Listing" (Tr. 19)(boldface in original).

Plaintiff does not dispute that the ALJ cited the applicable listing or failed to include the requirements of Listing 1.04 in the administrative opinion. *Plaintiff's Brief* at 9-10 (citing Tr. 19). Rather, she contends that the ALJ's explanation of the Step Three finding is "scarcely an analysis at all, and certainly does not tell this court or the parties what elements of the Listing are purportedly missing." *Plaintiff's Brief* at 9.

The ALJ's Step Three findings do not present grounds for remand. Plaintiff asserts

that the ALJ's failure "to explain her path through the evidence and the reasoning for conclusions she has reached," prevents "meaningful review of [the] decision." *Id.* at 9-10. But even assuming that the ALJ's above-stated conclusion lacks clarity standing alone, the basis for finding non-disability at Step Three is supplemented by the ALJ's later discussion of the medical records, including Plaintiff's "non-limited forward flexion," the absence of stenosis, a normal gait, full muscle strength, and negative straight-leg raising[2] (Tr. 21, ¶3). These findings, based on substantial evidence, stand directly at odds with a disability finding at Step Three under Listing 1.04.

The fact that the more detailed discussion of these records is contained in the ALJ's credibility analysis, rather than directly during the Step Three finding, does not, as Plaintiff contends, prevent "meaningful review" of the findings by this Court. *See Staggs v. Astrue,* 2011 WL 3444014, *3 (M.D.Tenn.2011)(citing *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir.2006)) (Sixth Circuit has "implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis"). The Sixth Circuit "has emphasized that there is no 'heightened articulation standard'"at Step Three. *Snoke v. Astrue,* 2012 WL 568986, *6 (S.D.Ohio 2012)(citing *Bledsoe* 165 F. App'x at 411)("[A]n ALJ is not obligated to 'spell out every consideration that went into the step three determination'")(punctuation omitted). In the present case, the plain language of the

---

[2]While a third condition, Spinal arachnoiditis, would provide grounds for a disability finding at Step Three under Listing 1.04, Plaintiff does not allege that she experiences this condition.

opinion, read in its entirety, shows that the ALJ considered and discussed the evidence supporting her Step Three finding. *Snoke,* at *6 (citing *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir.1986)). "The ALJ thus considered all evidence as required by the regulation." *Id.*

The Court is mindful that in another unpublished opinion, the Sixth Circuit remanded on the basis of an inadequate Step Three finding. *Reynolds v. Commissioner of Social Security,* 424 Fed.Appx. 411, 415, 2011 WL 1228165, *3 (6th Cir. 2011)("No analysis whatsoever was done as to whether Reynolds' physical impairments . . . met or equaled a Listing under section 1.00"). However, *Reynolds* is distinguishable from the present case. In *Reynolds,* the ALJ stated only that Plaintiff's "back pain" did not a meet a Listing under 1.00. In contrast here, the ALJ cited the applicable subsection of Listing 1.00, stating the conditions and symptoms required to find disability under Listing 1.04 (Tr. 19).

As here, the ALJ in *Reynolds* discussed the treating records elsewhere in the opinion, See E.D. Mich. Case No. 08-13055, *Docket #8*, Tr. 24. However in contrast to the present case, the analysis of the treating history in *Reynolds* provided no illumination as to how or why the claimant was ineligible for a Step Three disability determination. *Id.,* Tr. 24. Moreover, as noted by the Sixth Circuit, "in [Reynold's] case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing" *Reynolds,* 424 Fed.Appx. at 416, whereas here, the objective studies relied upon by the ALJ for the Step Three finding (negative straight leg raising, absence of stenosis, a normal gait) are strongly supported by the record. Significantly, while Plaintiff argues that the Step Three analysis was procedurally

inadequate, she does not dispute that substantial evidence supports the Step Three finding. For this reason, and because the ALJ's opinion as a whole sufficiently articulates support for the Step Three finding, remand is not required.

**B. The RFC**

Plaintiff next argues that the RFC crafted by the ALJ did not account for her true degree of limitation. *Plaintiff's Brief* at 10-13. Citing *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009), she contends that the ALJ's analysis of Dr. Beale's December, 2008 and February, 2010 assessments contain substantive and procedural error. In a related argument, she contends that the ultimate RFC not only failed to conform to the findings of Dr. Beale (a treating physician) but also did not incorporate the findings of either Dr. Ramirez or Edmunds. She asserts that the ALJ impermissibly "played doctor" by composing an RFC that was not supported by substantial evidence.

**1. The Treating Physician Analysis Does not Provide Grounds for Remand**

Plaintiff is correct that a treating physician's opinion, if uncontradicted, is entitled to deference. "If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley, supra,* 573 F. 3d at 266 (6th Cir. 2009)(internal quotation marks omitted)(citing *Wilson,* 378 F.3d 541, 544 (6th Circuit 2004); 20 C.F.R. § 404.1527(d)(2)). In rejecting the treating physician opinion, "an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion" along with any other relevant factors. *Wilson,* at 544; 20 C.F.R. § 404.1527(c)(1-6)).

The ALJ's rejection of Dr. Beale's December, 2008 and February, 2010 opinions reads as follows:

> [T]he undersigned affords little weight to the opinions of Dr. James Beale Jr., which stated the claimant can engage in fine finger manipulation for 1 hour, sit for 1 hour, walk for 1 hour and she cannot stand during an 8 hour work day. He also opined that the claimant can only occasionally bend, lift and carry 5 pounds, and that she requires a sit/stand option. . . . Dr. Beale's opinions are entitled to little weight because his opinions are conclusory, providing very little explanation of the evidence he relied on in forming his opinion.
> (Tr. 22).

The ALJ did not err in assigning little weight to Dr. Beale's opinion. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004)(ALJ entitled to reject a treating physician's opinion provided that s/he supplies "good reasons" for doing so). Consistent with the ALJ's analysis, Dr. Beale's finding that Plaintiff was unable to walk for more than one hour in an eight-hour workday stands at odds with Plaintiff's own denial of walking limitations (Tr. 261) and observations that she exhibited a normal gait (Tr. 261, 281). The ALJ is also correct that Dr. Beale's opinion that Plaintiff should be limited to one hour per day of fine finger manipulation (Tr. 357) is wholly unsupported by Dr. Beale's treating records and contradicted by observations that she did not experience *any* manipulative limitations (Tr. 280). Plaintiff also testified at the hearing that she did not

experience significant manipulative limitations (Tr. 40).

While Plaintiff asserts that Dr. Beale's assessment was "well-supported" by his treating records, a thorough review of these records provides little if any support for the walking and manipulative limitations imposed by the treating physician. Plaintiff cites an October, 2008 MRI showing lumbar disc protrusions for the proposition that Dr. Beale's findings were supported by objective testing. *Plaintiff's Brief* at 10-11 (citing Tr. 300). Nonetheless, the fact that the study showed some degree of degenerative disc disease (also cited by the ALJ in support of the RFC) does not account for Dr. Beale's finding of severe manipulative impairment or the fact that his walking limitations were contradicted by other examining sources and Plaintiff's own testimony.[3] Plaintiff also appears to argue that the "treating physician" rule required the ALJ to list all of the factors found in 20 C.F.R. § 404.1527(d)(2)), *i. e.,* (length and frequency of the treating relationship; nature of the treatment; supportability of the opinion; consistency with the rest of the record; and the specialization of treating source). However, having provided ample "good reasons" for rejecting Dr. Beale's opinion, the ALJ was not required to articulate *all* of the six factors found in § 404.1527(d)(2). *Tilley v. Commissioner of Social Security,* 394 Fed.Appx. 216, 222 (6th Cir. 2010).[4]

---

[3]

While examining sources stating that Plaintiff did not experience walking problems predate the October, 2008 MRI, notes accompanying the October, 2008 results state that Plaintiff had not experienced significant changes from an April, 2007 study (Tr. 300).

[4]

Plaintiff states incorrectly that all six factors found in § 404.1527(c) must be

Finally, I disagree with Plaintiff's contention that the ALJ impermissibly substituted her own opinion for that of the physicians of record in crafting the RFC. Admittedly, the ALJ's finding that Plaintiff was limited to sedentary work and with a sit/stand option, no overhead reaching, and avoidance of exposure to the cold was more restrictive than either that of Dr. Ramirez, who found no manipulative limitations, or Dr. Edmonds, who found that Plaintiff was capable of a full range of light work (Tr. 277-284,286-289). However, the administrative opinion includes an explanation for the inclusion of certain limitation and exclusion of others (Tr. 20-21). The ALJ supported her reasons for finding a greater level of restriction than these sources by reasonably finding that October, 2008 MRI results would create some degree of functional limitation (Tr. 21). She also supported her restriction on overhead reaching by citing Dr. Ramirez's observation that Plaintiff experienced a full range of motion but "some discomfort upon flexion or extension of the lumbar spine" (Tr. 21 citing 278). The sedentary work finding (maximum 10 pounds lifting) is consistent with Plaintiff's statement to Dr. Ramirez that she could lift up to 10 pounds (Tr. 277). Finally, the ALJ's "avoidance of exposure to cold" limitation is based on Plaintiff's testimony that cold weather exacerbated her back symptoms (Tr. 48). Because all of the limitations in the RFC composed by the ALJ are well supported and well explained, remand on this basis is unavailable.

---

articulated by the ALJ. *Reply* at 6. Instead, the Regulation requires the ALJ to *consider* these factors but nowhere states that they must be listed verbatim in the treating physician analysis.

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate impairments. However, I find no error, reversible or otherwise, in the Step Three findings, analysis and rejection of Dr. Beale's disability opinion, or the limitations chosen for inclusion in the RFC. Moreover, based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

**CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Doc. # 8] be DENIED and that Defendant's Motion for Summary Judgment [Doc. #11] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/ R. Steven Whalen
                                                      R. STEVEN WHALEN
                                                      UNITED STATES MAGISTRATE JUDGE

Date: April 19, 2012


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 19, 2012.

                                                        s/Johnetta M. Curry-Williams
                                                        Case Manager