UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN NORRIS,

        Plaintiff,                           Civil Action No. 11-CV-11974

vs.                                          HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**<u>OPINION AND ORDER REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, AND REMANDING THE CASE</u>**

**I.    Introduction**

This is a social security case brought by Plaintiff Ann Norris following the final determination of Defendant, the Commissioner of Social Security, denying her Disability Insurance Benefits and Supplemental Security Insurance. The matter was referred to Magistrate Judge R. Steven Whalen for all pretrial proceedings. Both parties filed motions for summary judgment (Dkts. 8, 11). The Magistrate Judge issued a report and recommendation ("R&R") recommending that the Court grant Defendant's motion for summary judgment and deny Plaintiff's motion (Dkt. 13).

Plaintiff filed objections (Dkt. 14) and Defendant filed a response (Dkt. 15). Plaintiff asserts two objections to the R&R, which the Court addresses in turn, below. The Court reviews <u>de novo</u> those portions of the R&R to which specific objections have been made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Plaintiff has waived the right to file all other objections not specifically mentioned. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). For the reasons that follow, the

1

Court rejects the R&R, and remands the case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## II. Background

Plaintiff applied for social security benefits on January 23, 2008, alleging disability beginning on June 23, 2006. After an initial denial of benefits, Plaintiff requested an administrative hearing, which was held on February 25, 2010 before Administrative Law Judge Mary Ann Poulose ("the ALJ"). On March 25, 2010, the ALJ concluded that Plaintiff was not disabled. The Social Security Administration denied review, and the instant action followed.

Plaintiff alleged a disability due to a lower back injury. The ALJ stated that, in arriving at her decision that Plaintiff was not disabled, she had reviewed Plaintiff's own testimony, the testimony Plaintiff's treating physician, Dr. James E. Beale, Jr. – together with his treatment notes and observations – and the treatment notes and observations of Social Security Administration physicians Dr. Sonia Ramirez and Dr. Charles Edmonds. As the ALJ described Plaintiff's claim, "[a]s a result of her alleged impairment, [Plaintiff] contends she has shooting pains in her rear end, numbness in her fingers and toe, and that she can neither sit nor stand for long periods of time." ALJ Op. at 20 (Transcript pagination) (Dkt. 6-2). Plaintiff testified that she "has not engaged in substantial gainful activity since June 23, 2006, the alleged onset date." Id. at 18. At the hearing, Plaintiff testified that she had difficulty caring for her personal needs, and that she relied on her sister to cook, do the laundry, and to shop. Id. at 20. Plaintiff testified that she takes medication, has received steroid injections, and participates in physical therapy, but that the treatments "have failed to manage her back pain." Id. at 20. Plaintiff testified that "an orthopedic doctor prescribed a cane for her," but she stated that "her right arm bothers her" due to her use of it. Id. The ALJ remarking regarding Plaintiff's functional abilities:

> [Plaintiff] testified that she cannot lift a 24 can case of soda, but she could retrieve a gallon of milk from the refrigerator. She remarked that she can sit for 20 minutes, stand for 10 minutes, and walk the distance of 7 houses from her own and then back . . . She said she has problems reaching overhead and that she cannot type for long periods. Moreover, she remarked cold exacerbates her back pain.

Id.

The R&R describes the treatment given to Plaintiff by Dr. Beale. In response to Plaintiff's complaints of back pain for over a year, Dr. Beal prescribed Darvocet and Motrin 800. R&R at 4. In April 2007, an MRI revealed "moderate degenerative changes at L5-S1." Id. at 4. Later, a physician noted that the April 2007 MRI "showed mild L5 radiculopathy but no stenosis and only a 'mild degree' of arthropathy at T2." Id. at 5. A November 2007 MRI "showed a disc protrusion of the lumbar spine," for which Dr. Beale prescribed more Motrin 800 and steroid injections. Id. at 4. Following her December 2007 steroid injections, Plaintiff reported that she had "good pain control from her epidural injections." Id. The ALJ noted that an accompanied treatment note "indicated that [Plaintiff's] epidural injections . . . improved [her] lumbar radicular pain." ALJ Op. at 21.

In January 2008, a CT scan of the lumbar spine showed "mild degenerative changes at L4-L5 and L5-S1." R&R at 5. An October 2008 MRI of the lumbar spine revealed no change from the previous MRI performed in April 2007. Id. Imaging studies from December 2008 "were negative for evidence of lumbosacaral radiculophy." Id.

> On December 18, 2008 Dr. Beale completed a work-related ability assessment, finding that Plaintiff was unable to sit or walk for more than one hour in an eight-hour workday and was unable to stand (Tr. 356). Plaintiff was limited to lifting five pounds and limited to occasional bending (Tr. 356). Dr. Beale found that Plaintiff required a job with a sit/stand option and would be unable to perform fine finger manipulations for more than one hour in an eight-hour day (Tr. 357). In February, 2010, Dr. Beale completed a second work-related abilities assessment, duplicating his findings of December 18, 2008 (Tr. 356-57, 388-89).

3

Id.

In March 2008, Dr. Ramirez conducted a physical examination on behalf of the Social Security Administration. The exam revealed "back tenderness but a normal range of motion . . . . normal manipulative abilities . . . . [and] [s]he did not exhibit the need for a walking aid." Id. at 6. In April 2008, also on behalf of the Social Security Administration, Dr. Edmonds performed a "non-examining Residual Functional Capacity Assessment." Id. The examination concluded that "Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation . . . [and there was an] absence of postural, manipulative, visual, communicative, or environmental limitations." Id. A vocational expert ("VE") classified Plaintiff's past work experience and provided findings on Plaintiff's work abilities, on which the ALJ relied in formulating her opinion. ALJ Op. at 22-23.

The ALJ concluded that Plaintiff experienced the severe impairment of degenerative disc disease of the lumbar spine but that the condition did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Id. at 18-19. Specifically, the ALJ concluded that "[w]hile [Plaintiff] experiences some pain and limitations as a result of degenerative disc disease, imaging studies and other objective clinical assessments do not reflect findings consistent with all the requirements identified in [Listing 1.04 (Disorders of the Spine)]." Id. (emphasis in original).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following limitations: "a sit/stand option, with no overhead reaching, and she must avoid exposure to the cold." Id. The ALJ concluded that objective medical evidence supported the RFC determination – this evidence included: the X-ray imaging of her lumbar spine; the October 2008 MRI; Plaintiff's steroid injections; and various physical examinations. Id. at 21. Citing the VE's job findings, the ALJ found although Plaintiff was

4

unable to perform any of her past relevant work, she could work as a cashier, telemarketer, and a customer service representative.  Id. at 22-23.

The ALJ acknowledged Plaintiff's statements that indicated more severe impairment but found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."  Id.  The ALJ explained that Plaintiff's statements alleging difficulty with daily activities was afforded little weight because such allegations are hard to verify, and it would be difficult to attribute such limitations to her pain as opposed to other factors.  Id. at 22.

The ALJ concluded that objective medical evidence was inconsistent with Plaintiff's alleged disability and purported back pain – this evidence included: a January 2008 CT scan; a December 2007 physical exam; a March 2008 consultative exam; and a December 2008 electromyography report.  Id. at 21.  The ALJ further noted that Plaintiff's "treatment history is not inconsistent with the residual functional capacity mentioned above."  Id.

With respect to the opinion of Dr. Beale, Plaintiff's treating physician, the ALJ stated:

> The undersigned affords little weight to the opinions of Dr. James Beale Jr., which stated the claimant can engage in fine finger manipulation for 1 hour, sit for 1 hour, walk for 1 hour, and that she cannot stand during an 8 hour work day. He also opined that the claimant can only occasionally bend, lift and carry 5 pounds, and that she requires a sit/stand option.  Exhibit 9F, pages 12-13 and Exhibit 13F.  Dr. Beale's opinions are entitled to little weight because his opinions are conclusory, providing very little explanation of the evidence he relied on in forming his opinion.

Id. at 22.

### III.  Discussion

#### a.  Legal Standards

In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, thereby, entitled to

5

> benefits. 42 U.S.C. § 405(h). Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). "The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." Callahan, 109 F.3d at 273.

Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405-406 (2009).

### b. The Treating Physician Rule

Plaintiff's first objection is that the Magistrate Judge erred by accepting the ALJ's rejection of the opinion provided by Dr. Beale, Plaintiff's treating physician. The Sixth Circuit has explained that under the treating physician rule, an ALJ must give "controlling weight" to a medical opinion of a claimant's treating physician, "as long as it 'is well-supported by medically acceptable . . . diagnostic techniques' and 'not inconsistent with the other substantial evidence' in the record." Sawdy v. Comm'r of Soc. Sec., 436 F. App'x 551, 553 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ concludes that the treating physician's opinion is not entitled to controlling weight, "the rule still requires the ALJ to fully consider it in accordance with certain factors." Id. These factors are set forth in 20 C.F.R. § 404.1527(d)(2)-(6) as the following nonexhaustive[1] list: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating

---

[1] The final item in this list is entitled "Other Factors" and provides: "When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(6).

source." Wilson v. Comm'r of Soc. Sec., 378 F3d 541, 544 (6th Cir. 2004). The rule further requires the ALJ

> to provide "good reasons" for discounting the opinion, id. § 404.1527(d)(2) – i.e., reasons "sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the . . . opinion and the reasons for that weight," SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Sawdy, 436 F. App'x at 553. The rule requiring the ALJ to identify reasons and explain "precisely how those reasons affected the weight" is a procedural requirement the absence of which "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Blakley, 581 F.3d at 407 (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007)). The purpose for this procedural requirement is two-fold: "to ensure adequacy of review and to permit the claimant to understand the disposition of his case." Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550-551 (2010) (citing Rogers, 486 F.3d at 242).

In rejecting the opinion of Dr. Beale, the ALJ stated: "Dr. Beale's opinions are entitled to little weight because his opinions are conclusory, providing very little explanation of the evidence he relied on in forming his opinion." Tr. 22. The ALJ also concluded that Dr. Beale's opinion was contradicted by other evidence and was "wholly unsupported" by his treating records. R&R at 15-16.

The Magistrate Judge noted that the ALJ did not explicitly track the regulation in a factor-by-factor analysis; nevertheless, the Magistrate Judge concluded that the ALJ's decision was not deficient because the ALJ provided ample "good reasons" to reject the treating physician's opinion and that the ALJ was not required to articulate all of the regulatory factors, only to consider them. R&R at 16. Plaintiff objects to the Magistrate Judge's conclusion and

7

argues that an articulation of each factor is required; otherwise, argues Plaintiff, there is no basis to determine whether a factor was in fact considered. Objections at 2-3.

In support of the conclusion that an articulation of each regulatory factor is not required, the Magistrate Judge cites, without further elaboration, Tilley v. Commissioner of Social Security, 394 F. App'x 216, 222 (6th Cir. 2010). In Tilley, the Sixth Circuit rejected an argument that the ALJ failed to address each of the regulatory factors where the ALJ's decision "fully described the reasoning for discounting [the treating physician's] opinion." The Magistrate Judge is correct that Tilley indicates that there is not a per se rule that requires an articulation of each regulatory factor. See Pollard v. Astrue, No. 11-186, 2012 WL 2341814, at *4 (S.D. Ohio June 20, 2012) (noting in a parenthetical that Tilley "indicat[es] that, under Blakely and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision"); see also Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009) (ALJ's decision not to give controlling weight to treating physician acceptable where ALJ's "observations address[ed] several of the factors"). However, the Court disagrees that the ALJ's single-sentence explanation why Dr. Beale's opinion should be afforded little weight satisfies the "procedural requirement" for "identifying the reasons . . . and for explaining precisely how those reasons affected the weight." See Blakely, 581 F.3d at 407. Accordingly, the Court concludes that remand is appropriate.

This conclusion is consistent with the Sixth Circuit's decision in Friend, 375 F. App'x at 543, in which the Sixth Circuit addressed an ALJ's decision that summarily discounted a treating physician's opinion. As the panel described the ALJ's decision:

> The ALJ's rationale for discounting that opinion was expressed simply as "the testimony of Dr. Nusbaum, which would allow the claimant to stand/walk for one

8

> hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective clinical findings," and "there is no basis for Dr. Angerman's conclusion that the claimant can stand/walk for only one hour in a day."

Id. at 551. The Sixth Circuit concluded that this explanation "is not 'sufficiently specific' to meet the requirements of the rule on its face, inasmuch as it neither identifies the 'objective clinical findings' at issue nor discusses their inconsistency with Dr. Angerman's opinion." Id. (quoting 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling 96-2p, 1996 WL 374188, at *5). In our case, the ALJ provided even less explanation. The ALJ recited Dr. Beales findings and then stated that Dr. Beale's opinion was conclusory and that he did not explain his supporting evidence. However, the ALJ did not explain how she reached that conclusion. At the very least, the ALJ could have – and should have – indicated why the numbers opined by Dr. Beale are inconsistent with and unsupported by the treatment notes and other evidence. Thus, the ALJ's decision was itself conclusory and was not "sufficiently specific" to meet the requirements of the rule.

Defendant relies on Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001), for the proposition that "the ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." However, this does not mean that the ALJ need not explain his conclusion that the treating physician's opinion is conclusory and unsupported. Furthermore, the Magistrate Judge's more complete analysis does not cure the ALJ's deficiency. In accepting the ALJ's decision, the Magistrate Judge provided an analysis explaining how treating physician's opinion was inconsistent with the other evidence. The Magistrate Judge reasoned:

> Consistent with the ALJ's analysis, Dr. Beale's finding that Plaintiff was unable to walk for more than one hour in an eight-hour workday stands at odds with Plaintiff's own denial of walking limitations (Tr. 261) and observations that she exhibited a normal gait (Tr. 261, 281). The ALJ is also correct that Dr. Beale's opinion that Plaintiff should be limited to one hour per day of fine finger

9

> manipulation (Tr. 357) is wholly unsupported by Dr. Beale's treating records and contradicted by observations that she did not experience any manipulative limitations (Tr. 280). Plaintiff also testified at the hearing that she did not experience significant manipulative limitations (Tr. 40).

R&R at 15-16. However, "even where the conclusion of the ALJ may be justified based upon the record," the failure of the ALJ to follow the procedural requirements is enough to "denote[] a lack of substantial evidence." Blakley, 581 F.3d at 407.

Where an ALJ's error is a de minimus violation of a procedural rule, there may be grounds not to remand the case and to label the violation a harmless error. Wilson, 378 F3d at 547 (declining to decide whether a de minimus violation qualifies as harmless error). Such harmless error may include the instance where (i) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (ii) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (iii) "where the Commissioner has met the goal . . . the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." Id. However, in this case, the ALJ's error was not harmless. Notwithstanding the Magistrate Judge's analysis, Dr. Beale's opinion is not on its face "so patently deficient." The second instance contemplated by the Wilson court is not applicable, as the ALJ did not adopt the treating physician's opinion and the ALJ's finding were not consistent with it. Finally, the procedural safeguard of reasons has not been met. This factor has been explained to refer to an instance where the "'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." Friend, 375 F. App'x at 551 (citing Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 470-472 (6th Cir. 2006) (emphasis in original)). In such an instance, "the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's

opinion." That is not the case here. The ALJ's single sentence stating the reason for rejecting the treating physician's opinion did not make the reason for the rejection clear. Similarly, the ALJ's review of the other evidence in the case did not constitute an indirect attack – certainly not a clear one – on the treating physician's opinion.

Accordingly, because the reasons given by the ALJ for discounting the treating physician's opinion are not "sufficiently specific" to satisfy the regulatory requirements, and because such error is not harmless, remand is warranted.

### c. Plaintiff's Objection to the ALJ's RFC Assessment

Plaintiff's second objection is that the Magistrate Judge erred in adopting the ALJ's RFC assessment because it was inconsistent with those set forth by the various medical sources. Plaintiff contends that the ALJ's determination was an impermissible substitution of her own judgment for that of the physicians'. However, the ALJ was allowed to consider evidence other than opinions of medical personnel:

> Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding. See Ford v. Comm'r of Soc. Sec., 114 F. App'x 194, 197 (6th Cir.2004).

Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. 2009). Furthermore, "[a]lthough physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner." Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009). Thus, there is nothing inherently objectionable with the ALJ's determination of an RFC that "was more restrictive than either that of Dr. Ramirez . . . or Dr. Edmonds." R&R at 17. As the Magistrate Judge described, the ALJ did provide support for her RFC findings and the particular restrictions thereto. However, as discussed above, the ALJ

failed to support her discounting of the treating physician's opinion with sufficient specificity. Accordingly, the Court will sustain Plaintiff's objection only to the extent that it relates to the treating physician's opinion.

### IV. Conclusion

For the foregoing reasons, the Court sustains in part Plaintiff's objections (Dkt. 14), to the extent they relate to the ALJ's treatment of the treating physician's opinion, rejects the R&R (Dkt. 13), and remands the case to the ALJ to issue a new decision consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

SO ORDERED.

Dated:  August 20, 2012                    s/Mark A. Goldsmith
        Flint, Michigan                    MARK A. GOLDSMITH
                                           United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2012.

                                           s/Deborah J. Goltz
                                           DEBORAH J. GOLTZ
                                           Case Manager